1  RACHEL KREVANS (BAR NO. 116421)
   MATTHEW I. KREEGER (CA SBN 153793)
2  WESLEY E. OVERSON (BAR NO. 154737)
   LAWRENCE B. BERROYA (BAR NO. 194272)
3  PETER P. MERINGOLO (BAR NO. 197136)
   MORRISON & FOERSTER LLP
4  425 Market Street
   San Francisco, California 94105
5  Telephone: (415) 268-7000
   Facsimile: (415) 268-7522
6
   Attorneys for Petitioner
7  CHIRON CORPORATION

8

9
              UNITED STATES DISTRICT COURT
10
             NORTHERN DISTRICT OF CALIFORNIA
11

12

13  CHIRON CORPORATION,                    **C 04      4674**

14              Petitioner,

15      v.                                  **JOINT PETITION TO CONFIRM
                                            ARBITRATION AWARD AND FOR
16  ROCHE MOLECULAR SYSTEMS, INC.,          ENTRY OF JUDGMENT**

17              Respondent.

18

19       Chiron Corporation ("Chiron") and Roche Molecular Systems, Inc. ("Roche") jointly

20  petition the court pursuant to 9 U.S.C. §§ 9 and 13 for an order confirming the award of the

21  arbitrator in the matter of the arbitration between Chiron and Roche made on September 28,

22  2004, and directing that judgment to be entered accordingly.

23       This petition is made on the following grounds:

24                            **JURISDICTION**

25       1.    Chiron is a corporation incorporated under the laws of the state of Delaware, with

26  its principal place of business at 4560 Horton Street, Emeryville, California 94608.

27

28

**PETITION TO CONFIRM ARBITRATION AWARD AND FOR ENTRY OF JUDGMENT**
sf-1798262

1        2.    Roche is a Delaware corporation with its principal place of business within this

2  District.

3        3.    The jurisdiction of the Court is based on 9 U.S.C. § 9.

4        4.    Chiron and Roche entered into the Settlement Agreement dated October 10, 2000.

5  A copy of the Settlement Agreement is attached as Exhibit A, and is incorporated by reference.

6        5.    The Settlement Agreement evidences a transaction involving interstate commerce

7  within the meaning of 9 U.S.C. §§ 1 and 2 because, as part of the settlement, among other things,

8  Chiron licensed to Roche certain Chiron patents that cover the sale of certain Roche products

9  inside and outside the United States.

10        6.    The Settlement Agreement contains an agreement to resolve by arbitration any

11  dispute arising out of or related to the Settlement Agreement.

12        7.    The Settlement Agreement provides that judgment on an award made pursuant to

13  arbitration shall be entered by a court of competent jurisdiction.   Pursuant to the Settlement

14  Agreement, Roche consents to the jurisdiction and venue of this Court.

15        8.    A dispute arose between Chiron and Roche relating to U.S. Patent No. 6,531,276,

16  issued to Chiron on March 11, 2003.

17        9.    Chiron and Roche selected the Honorable Charles B. Renfrew to act as the

18  arbitrator in order to resolve this dispute.

19        10.    An arbitration hearing was conducted in New York, New York from June 21 to

20  June 29, 2004.  After post-hearing briefing, closing arguments were heard on August 13, 2004.

21  Thereafter, Chiron and Roche agreed to a stipulated award.

22        11.    On September 28, 2004, Judge Renfrew issued an award in writing and delivered

23  it to the parties in these proceedings.  A copy of the award is attached as Exhibit B, and is

24  incorporated by reference.

**PETITION TO CONFIRM ARBITRATION AWARD AND FOR ENTRY OF JUDGMENT**
sf-1798262

WHEREFORE, Chiron and Roche jointly request that:

A.  An order of this court be made confirming the award; and

B.  Judgment be entered in conformity with that order.

Dated:  November 2, 2004

RACHEL KREVANS
MATTHEW I. KREEGER
WESLEY E. OVERSON
LAWRENCE B. BERROYA
PETER P. MERINGOLO
MORRISON & FOERSTER LLP


By: _____
                Rachel Krevans
        Attorneys for Chiron Corporation



CHARLES B. COHLER
PAUL, HASTINGS, JANOFSKY & WALKER LLP


By: _____
                Charles B. Cohler
        Attorneys for Roche Molecular Systems, Inc.

**PETITION TO CONFIRM ARBITRATION AWARD AND FOR ENTRY OF JUDGMENT**
sf-1798262

# Exhibit A

## SETTLEMENT AGREEMENT

This AGREEMENT is made as of the 10th day of October, 2000, by and among CHIRON CORPORATION ("Chiron"), a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 4560 Horton Street, Emeryville, California 94608, ROCHE HOLDING, LTD., a corporation organized and existing under the laws of Switzerland, having a principal place of business at Grenzacherstrasse 124, Basel Bale 4002, F. HOFFMANN-LA ROCHE LTD., a corporation organized and existing under the laws of Switzerland, having a principal place of business at Grenzacherstrasse 124, Basel Bale 4002, HOFFMANN-LA ROCHE INC., a corporation organized and existing under the laws of the State of New Jersey, having a principal place of business at 340 Kingsland Street, Nutley, New Jersey 07110, ROCHE MOLECULAR SYSTEMS, INC., a corporation organized and existing under the laws of the State of Delaware, having places of business at 1145 Atlantic Avenue, Suite 100, Alameda, California 94501 and at 1080 U.S. Highway 202, Branchburg, New Jersey 08876, and ROCHE DIAGNOSTIC SYSTEMS, INC., a corporation organized and existing under the laws of the State of New Jersey, having its principal place of business at 1080 U.S. Highway 202, Branchburg, New Jersey 08876, together with all Affiliates as defined in § 1.2 of the HCV Probe License Agreement (hereafter referred to individually and collectively as "Roche").

### WITNESSETH:

WHEREAS, Chiron is the owner of United States and foreign patents and patent applications relating to nucleic acid testing for Hepatitis C Virus (collectively, the "Chiron HCV Patents") and U.S. and foreign patents and patent applications relating to nucleic acid testing for Human Immunodeficiency Virus (collectively, the "Chiron HIV Patents"), which are identified in Schedules to the License Agreements recited in Paragraphs 1(b) - (c), *infra*;

WHEREAS Roche is the owner of United States and foreign patents relating to nucleic acid testing for Hepatitis C Virus (collectively, the "Roche HCV Patents") which are identified in Schedules to the License Agreement recited in Paragraphs 1(b) - (c), *infra*;

WHEREAS, Chiron and Roche are parties in a civil action in the United States entitled Chiron Corporation v. F. Hoffmann-La Roche Ltd., Hoffmann La Roche, Inc., Roche Molecular Systems, Inc., Roche Diagnostics, Inc. and Daniel W. Bradley, C98-0315 CW, currently pending in the United States District Court for the Northern District of California ("the U.S. Action"). Chiron, inter alia, (a) alleges that Roche infringes certain of the Chiron HCV Patents, namely Chiron's U.S. Patents 5,712,088, 5,714,596 and 5,863,719, based on Roche's manufacture, use, offer to sell, sale and/or importation of nucleic acid assays and oligonucleotides for, inter alia, the detection and/or quantification of HCV, (b) alleges that Roche has tortiously interfered with a 1990 Settlement Agreement among Chiron, the Centers for Disease Control and Dr. Daniel W. Bradley, based on, inter alia, a 1998 Agreement between Roche and Dr. Bradley (the "1998 Roche/Bradley Agreement") and (c) has sought a Declaratory Judgment that Chiron is the sole owner of its U.S. and foreign patents relating to HCV. Roche has asserted affirmative defenses against the above Chiron U.S. Patents of, inter alia, patent invalidity, non-infringement, unenforceability based on inequitable conduct, inventorship by Dr. Bradley, patent misuse, and express and implied license based on Roche's agreements with Cetus Corporation. Roche has counterclaimed for (a) declaratory judgment of invalidity, noninfringement and unenforceability of the above Chiron U.S. Patents; (b) breach of covenants and licenses based, inter alia, on agreements between Roche and Cetus Corporation; and (c) federal and state antitrust violations and violations of California's unfair competition statute. Roche has asserted a counterclaim in the U.S. Action in its May 4, 1998 "Answer and Counterclaims of Defendants Hoffmann-La Roche Inc., Roche Molecular Systems, Inc., and Roche Diagnostics Systems, Inc. and Counterclaim of Roche Molecular Systems, Inc. for infringement of U.S. Patent No. 5,580,718" that Chiron's "making, using and selling of products for the detection of HCV, including nucleic-based assays that test for the presence and quantity of HCV in individuals" infringes Roche's U.S. Patent 5,580,718 (the "'718 patent") and Chiron Settlement Agreement 101000.doc--10/9/00-8:30P

has asserted counterclaims for non-infringement, invalidity and unenforceability of both the '718 and Roche's U.S. Patent 5,527,669 (the "'669 patent" and collectively, the "Roche Patents");

WHEREAS, Chiron and Roche are parties in currently pending civil actions outside of the United States (collectively, "the Non-U.S. Actions") as set forth and described in Schedule C to this Agreement in Italy, Germany, the Netherlands, Japan, Australia, and to proceedings in the European Patent Office ("EPO") and the National Patent Office of Japan collectively regarding, inter alia, (a) Chiron HCV Patents issued in foreign countries and the EPO which involve allegations of infringement against Roche and Roche's defenses of, inter alia, patent invalidity, non-infringement, inventorship by Dr. Bradley, co-ownership based on a 1998 agreement with Dr. Bradley, and express and implied license based on agreements between Roche and Cetus Corporation, (b) the Chiron HIV Patents issued in foreign countries and the EPO which involve, inter alia, allegations of infringement against Roche relating to nucleic acid assays for the detection of HIV and Roche's defenses of, inter alia, patent invalidity, non-infringement; (c) validity and infringement of Roche's European Patent 505,012 B1 and the Italian counterpart thereof (the "TMA Litigation"); (d) the Technical Board of Appeal proceedings in the European Patent Office with respect to Chiron's European Patent 181,150 B1 and Roche's European Patents 505,012 B1 and 529,493 B1; and (e) claims and defenses relating to the law of competition, antitrust, and patent misuse;

WHEREAS, it is the intention of Chiron and Roche to resolve all future disputes concerning the infringement of future Roche HCV and HIV assays and/or oligonucleotides for the nucleic acid detection and/or quantification of HCV and/or HIV (hereinafter "future Roche Products") under Chiron HCV and HIV patents through dispute resolution procedures, as set forth in Article 10 of the HIV Probe License Agreement, Article 10 of the HCV Probe License Agreement, and Article 10 of the Blood Screening HCV/HIV Probe License Agreement, subject to the provisions of the Consent Judgment;

Settlement Agreement 101000.doc—10/9/00-8:30P

3

WHEREAS, it is the intention of Chiron and Roche to resolve their disputes concerning the infringement of presently issued Chiron HCV Patents and Chiron HIV Patents as to all Roche HCV and HIV assays and oligonucleotides for the nucleic acid detection and/or quantification of HCV and/or HIV as set forth in the Schedules to the License Agreements recited in Paragraphs 1(b) - (c), *infra*, respectively ("Existing Roche HCV and HIV Products"), except for the Technical Board of Appeal proceedings with respect to Chiron's European Patent 181,150 B1;

WHEREAS, Chiron and Roche wish to resolve the U.S. Action and the Non-U.S. Actions to which they are respectively parties without further litigation;

WHEREAS, Chiron and Roche wish to prevent further litigation relating to the Chiron HCV Patents, the Chiron HIV Patents, and/or the Roche HCV Patents;

WHEREAS, Chiron and Roche wish to seek the dismissal of the TMA Litigation; and

WHEREAS, Chiron wishes to also have resolved any and all claims between Chiron and Dr. Daniel W. Bradley; therefore

IT IS AGREED, in consideration of all the mutual promises, covenants and conditions hereinafter set forth as follows:

1.       Chiron and Roche agree to the terms of the documents listed in this paragraph 1(a) – (g) which are incorporated in this Agreement as if fully set forth herein, as accepted by the Court, foreign court, foreign patent office or European Patent Office (hereinafter "Tribunal") to which the document is directed and immediately after executing this Agreement, Chiron and Roche will execute, or cause their attorneys of record in the U.S. Action and the Non-U.S. Actions to execute the following documents:

(a)      Consent Judgment in the U.S. Action in the form of Exhibit A annexed hereto;

Settlement Agreement 101000.doc--10/9/00-8:30P

4

(b)      HCV Probe License Agreement in the form of Exhibit B annexed hereto, and HIV Probe License Agreement in the form of Exhibit C annexed hereto, licensing the Chiron HCV Patents and the Chiron HIV Patents to Roche and granting an option to license the Roche HCV Patents to Chiron;

(c)      Blood Screening HCV/HIV Probe License Agreement, in the form of Exhibit D annexed hereto, licensing on a restricted basis the Chiron HCV Patents and the Chiron HIV Patents to Roche in probe-based blood screening;

(d)      Consent Judgments or other appropriate pleadings in each Non-U.S. Action, providing that each such action is dismissed with prejudice and that each Chiron HCV patent-in-suit is valid, enforceable, and infringed as applicable.  Such consent judgments and pleadings shall be mutually agreed upon by the parties and submitted by their counsel to the appropriate court or tribunal within 30 days of execution of this Settlement Agreement;

(e)      Joint Petition seeking dismissal by Chiron and Roche of the TMA Litigation as to each other (but not as to Gen-Probe Inc.) as mutually agreed upon by the parties and accepted by the Tribunal to which such document is submitted;

(f)      Release by Chiron to Roche in the form of Exhibit E annexed hereto; and

(g)      Release by Roche to Chiron in the form of Exhibit F annexed hereto.

2.             Promptly after the parties execute this Agreement, Chiron will (a) submit the fully executed Consent Judgment in the U.S. Action (Exhibit A hereto) to the United States District Court for the Northern District of California for signing and entry and (b) deliver negotiated and fully executed Consent  Judgments or other appropriate pleadings for each Non-U.S. Action and the Joint Petition to the appropriate Chiron or Roche foreign counsel to be filed promptly in order to achieve dismissal of the respective Non-U.S. Actions.

Settlement Agreement 101000.doc--10/9/00-8:30P

3.          Upon execution of this Settlement Agreement, the parties shall execute and exchange the License Agreements (Exhibits B, C and D hereto), the Release to Roche executed by Chiron (Exhibit E), and the Release to Chiron executed by Roche (Exhibit F).

4.          If for any reason any of the U.S., foreign courts, tribunals or foreign patent offices or the European Patent Office do not approve the respective Consent Judgment(s) referred to in Paragraph 1 of this Agreement or other appropriate pleadings, the parties agree promptly to confer in good faith in an effort to modify the Consent Judgment(s) or other appropriate pleadings to overcome any objections by the respective courts, tribunals, patent offices or the European Patent Office in order to achieve entry of an order that accomplishes the purposes set forth in Paragraph 1(d) of this Agreement.  Should the parties fail to agree on the acceptability of a consent judgment being originally negotiated or a subsequent one being negotiated to achieve its entry, the parties must seek a resolution of such dispute pursuant to Paragraph 9 of this Agreement.

5.          Roche agrees that it will not interfere with Chiron's efforts to achieve a resolution of all claims and disputes between Chiron and Dr. Bradley.

6.          Chiron hereby represents, warrants and covenants to Roche that it has the corporate power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and the execution, delivery and performance of this Agreement have been duly and validly authorized by Chiron.  Upon execution and delivery of this Agreement by Chiron, this Agreement shall constitute a legal, valid and binding agreement of Chiron, enforceable in accordance with its terms, subject to bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforceability of creditors' rights generally and other general equitable principles which may limit the right to obtain certain remedies.

7.          Roche hereby represents, warrants and covenants to Chiron that it has the corporate power and authority to execute and deliver this Agreement and to perform its

Settlement Agreement 101000.doc--10/9/00-8:30P

obligations hereunder, and the execution, delivery and performance of this Agreement have been duly and validly authorized by Roche. Upon execution and delivery of this Agreement by Roche, this Agreement shall constitute a legal, valid and binding agreement of Roche, enforceable in accordance with its terms, subject to bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforceability of creditors' rights generally and other general equitable principles which may limit the right to obtain certain remedies.

8.          Roche Holding, Ltd. hereby represents, warrants and covenants to Chiron that it has the power and authority, on behalf of itself and as agent for Roche Affiliates as Affiliates are defined in § 1.2 of the HCV Probe License Agreement, to execute and deliver this Agreement and to perform its obligations hereunder, and the execution, delivery and performance of this Agreement have been duly and validly authorized by Roche Holding, Ltd. and Roche Affiliates. Upon execution and delivery of this Agreement by Roche Holding, Ltd., this Agreement shall constitute a legal, valid and binding agreement of Roche Holding, Ltd. and Roche Affiliates, enforceable in accordance with its terms, subject to bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforceability of creditors' rights generally and other general equitable principles which may limit the right to obtain certain remedies.

9.          <u>Resolution of Disputes</u>.

(a)          Any dispute arising out of or relating to this Agreement, or its subject matter, worldwide shall be resolved in accordance with the procedures specified in this paragraph, which shall be the sole and exclusive procedures by which the parties are required to resolve any such disputes.

(b)          Chiron is entitled to seek a temporary restraining order, a preliminary injunction or other provisional relief against infringement at any time to preserve the status quo and to enforce the provisions of this Paragraph 9 for the Resolution of Disputes. The parties

agree that the United States District Court for the Northern District of California shall
have jurisdiction and venue for the grant and enforcement of such an injunction.

(c)      Regardless of whether a party seeks the relief set forth in paragraph 9(b), the
parties shall attempt in good faith to resolve any dispute arising out of or relating in any
way to this Agreement or its subject matter, the License Agreements and Releases,
including but not limited to their interpretation and effect, promptly by negotiation
between the following representatives for each party: General Counsel and Chief Patent
Counsel.  Any party may give the other party written notice of any dispute not resolved in
the normal course of business ("Notice") . Within fifteen (15) days after delivery of the
Notice, the receiving party shall submit to the other a written response.  The Notice and
the response shall include (i) a statement of each party's position and a summary of
arguments supporting that position, and (ii) the name and title of the executive who, in
addition to the Chief Patent Counsel, will represent that party and of any other person
who will accompany the executive.  Within thirty (30) days after delivery of the Notice,
the Chief Patent Counsel of both parties shall meet at a mutually acceptable time and
place, and thereafter as often as they mutually deem necessary, to attempt to resolve the
dispute, unless the Chief Patent Counsel of both parties mutually agree otherwise, such
meetings shall involve the executive who has been designated to represent each party.
All communications and negotiations pursuant to this clause, whether involving attorneys
or non-attorneys, are confidential and shall be treated as compromise and settlement
negotiations for purposes of applicable rules of evidence.

(d)      If good faith negotiations fail to resolve any dispute pursuant to the provisions of
paragraph 9(c) of this Agreement, then the dispute shall be submitted to final and binding
arbitration in accordance with the following provisions ("Arbitration"):

(1)     A party may invoke these Arbitration provisions by providing written notice of such invocation to the other party, after good faith efforts to accomplish a negotiated settlement pursuant to paragraph 9(c) have failed in the judgment of the party invoking arbitration.

(2)     Any Arbitration shall be conducted by a single neutral Arbitrator in accordance with the applicable rules for arbitration as determined by the CPR Institute of Dispute Resolution ("CPR"), New York, N.Y. The rules and procedures set forth herein shall govern if such rules and procedures conflict with those of CPR. The decision of the Arbitrator as to all matters presented to the Arbitrator shall be final and binding.

(3)     The parties shall have twenty-one (21) days from the date Arbitration is invoked mutually to agree upon a neutral Arbitrator with experience in patent law. If the parties are unable to agree, then the Arbitrator shall be selected in the manner determined by CPR or if, at the time of any such Arbitration invocation, CPR is no longer in existence or engaged in such Arbitration services, then by the American Arbitration Association.

(4)     The Arbitration hearing shall be held in New York, New York, unless the parties mutually agree otherwise. The Arbitrator, regardless of where the dispute arose, shall apply exclusively to any dispute the substantive laws of the State of New York, without giving effect to its rules pertaining to conflicts of laws, the patent laws of the country or countries issuing the relevant patents, and

the competition laws of the jurisdiction which would otherwise be applicable.

(5)     The Arbitration hearing shall commence no more than ninety (90) days after the selection of the Arbitrator.  All parties shall exchange the items referred to in subsections (i) and (iii) of this paragraph 9(d)(5) at least twenty-one (21) days prior to the hearing, the items referred to in subsection (iv) of this paragraph 9(d)(5) at least seven (7) days prior to the hearing, and the items referred to in subsection (ii) of this paragraph 9(d)(5) at least forty (40) days prior to the hearing:

(i)     A copy of all exhibits each party intends to introduce at the hearing;

(ii)    A list of all witnesses that will be called in each party's respective case in chief and a short summary of the testimony of each witness;

(iii)   A proposed ruling on each issue to be resolved; and

(iv)    A brief in support of the party's proposed ruling(s), provided that such brief shall not exceed forty (40) pages for each patent at issue, regardless of the number of issues to be resolved.

(6)     Any time period set forth in this Agreement for arbitration may be extended by agreement of the parties, or by Order of the Arbitrator on a showing of good cause, but in no event shall any modification of a time period result in extending the final decision beyond six (6) months from the date the Arbitrator is selected.

Settlement Agreement 101000.doc–10/9/00-8:30P

(7)     Each party shall be entitled to make such discovery requests of the
other as such requesting party reasonably determines would be
material to the Arbitration, and such discovery shall be permitted
by any means, including depositions, interrogatories, requests for
admissions, or production of documents.  Discovery requests may
be served at any time after service of the Notice of Arbitration and
must be responded to within fourteen (14) days of service (subject
to Order by the Arbitrator entered on a showing of good cause).  In
the event that the parties are unable to agree upon whether a
discovery request is reasonable, the Arbitrator shall make a
determination as to the reasonableness and availability of the
discovery requested.  Protective orders limiting the access of
employees of parties to discovery materials will be available for
competitively sensitive information.  Notwithstanding the
foregoing, Chiron shall be entitled to request the following
documentation:

(i)     Requests for nucleotide sequence information of any
polynucleotides or oligonucleotides used in an accused
product; descriptions of the method of operation, and
sensitivity or specificity of an accused product or the
oligonucleotides used therein; package inserts relating to an
accused product; and technical review and "milestone"
reports on the accused product.

(ii)    In the event Roche asserts a defense to infringement based
upon 35 U.S.C. § 271(e)(1), then Chiron shall be entitled to

documents sufficient to show whether or not sales or uses
are reasonably related to testing for FDA approval,
including but not limited to documents concerning
distribution or sale of accused products and the identity of
customers or users of the accused products, contracts with
customers, study protocols, IND applications and other
filings with or communications to or from the FDA.

Notwithstanding the foregoing, Roche shall be entitled to request
all prosecution histories, documents concerning the conception or
reduction to practice of claimed subject matter or the best mode for
practicing the claimed subject matter and all prior art to the extent
that the dispute concerns a Chiron HCV or HIV Patent that has not
issued as of the date of this Agreement.

(8)     In the case of disputes, or issues within disputes, involving
determination of a monetary amount, percentages, or other similar
quantitative or numerical matters, such as, for example the amount
of royalty owed or to be paid under a license agreement, the
Arbitration shall be conducted "baseball" style: the Arbitrator
shall issue an award only on the exact same terms requested by one
party or the other. The Arbitrator is not authorized to impose any
award which varies from the proposed terms submitted by one of
the parties.

(9)     For all disputes other than those described in the preceding
subparagraph (8), the Arbitrator shall be free to resolve the dispute
in a manner that is not consistent with the exact version of the

proposed terms submitted by one of the parties. The Arbitrator may use the services of a scientific/technical advisor of the Arbitrator's choice. The Arbitrator shall give the parties notice and an opportunity to object to the Arbitrator's choice of a scientific/technical advisor, and such objections shall be considered by the Arbitrator before finalizing his/her selection.

(10)   An Arbitration hearing will be conducted on four (4) consecutive days and shall be governed by the following rules:

    (i)    Each party shall be entitled to no more than ten (10) hours of hearing time to present its case in chief.  The Arbitrator shall decide when each party has utilized its ten (10) hours.

    (ii)    Each party shall be entitled to make an opening statement, to present direct and rebuttal testimony, documents or other evidence, and to cross-examine the other party's witnesses; provided, however, cross-examination shall occur immediately following direct testimony and the time shall be charged against the party conducting the cross-examination.

Notwithstanding the foregoing, in any dispute concerning a Future Roche HCV or HIV Product or a Chiron HCV or HIV Patent that has not issued as of the date of this Agreement, a party may request a modified schedule so that the relevant issues can be fully presented.

(11)   Within twenty-one (21) days following the hearing, each party shall submit to the other party and the Arbitrator a post-hearing

brief in support of its proposed rulings and remedies, provided that
such brief shall not exceed forty (40) pages per patent at issue
regardless of the number of issues involved.  Each party may
submit an answering brief not exceeding twenty (20) pages.

(12)   The Arbitrator shall render an award together with a decision on
the award in writing within seven (7) calendar days following the
submission of post-hearing briefs.

(13)   The parties shall split equally the expenses of the Arbitrator and of
CPR. The Arbitrator is expressly empowered to award attorneys'
fees and expenses to the prevailing party as well as other remedies
to which either party would be entitled if the dispute were resolved
in court.

(14)   Insofar as it is the parties' intent to conduct the Arbitration in an
expeditious manner, the parties hereby acknowledge that all of the
terms and provisions of the foregoing shall be strictly applied
unless the parties agree otherwise, or unless the Arbitrator
determines, upon good cause shown after an opportunity for both
sides to present their positions, that extraordinary circumstances
are present which justify modification; provided, however, the only
provisions which shall be subject to modification pursuant to this
subparagraph (14) shall be subparagraphs (5), (6), (7), (10) and
(11).

(15)   The Arbitrator shall be bound by the Consent Judgments referred
to in Paragraph 1 of this Settlement Agreement and all orders,
rulings and determinations contained therein and, regarding the

U.S. Action, all orders and rulings made in the U.S. Action to the extent applicable and not otherwise excepted by or inconsistent with the consent judgments or the HCV Probe License Agreement.

(16) Any ruling or award of the Arbitrator shall be final and binding, and a judgment upon the award of the Arbitrator may be entered in any court of competent jurisdiction. The Federal Arbitration Act or any applicable state law shall govern the application and enforcement of the provisions of this paragraph 9.

(e) Without limiting the foregoing, and subject to the HCV and HIV Probe License Agreements, in any action or proceeding pursuant to this paragraph 9 with respect to any dispute concerning the coverage of a presently issued Chiron HCV Patent or Chiron HIV Patent with respect to an Existing Roche Product, Roche stipulates that irreparable harm to Chiron for purposes of injunctive relief is determined in Chiron's favor and Roche shall not assert any defense to the contrary.

(f) The statute of limitations of the State of New York applicable to the commencement of a lawsuit shall apply to the commencement of an Arbitration hereunder, except that no defenses shall be available based upon the passage of time during any negotiation or mediation called for by the preceding subparagraphs of this paragraph.

(g) All proceedings, submissions, and decisions related to the arbitration shall be confidential and held in confidence, except as otherwise required to be disclosed by law or to enforce the Arbitrator's award.

10. Any notice required under this Agreement shall be in writing sent by certified mail, postage prepaid, or by telecopier (confirmed by certified mail) addressed as follows:

        If to Chiron:      4560 Horton Street
                               Emeryville, California 94608

Attention:  Office of General Counsel
Telecopier No. (510) 655-3542

If to Roche:          Roche Molecular Systems, Inc.
4300 Hacienda Drive
Pleasanton, California  94588
Attention:  General Counsel
Telecopier No. (510) 814-2956

All notices shall be deemed to be effective on the date of receipt.  In case any party changes its address at which notice is to be received, written notice of such change shall be given without delay to the other parties in accordance with the terms of this paragraph 10.

11.          This Agreement is binding upon and shall inure to the benefit of Chiron and Roche, and each of their successors and assigns that come into being after the date of this Settlement Agreement.

12.          This Agreement and the documents referred to herein set forth the entire agreement and understanding among the parties hereto as to the subject matter hereof and has priority over all documents, verbal consents or understandings, if any, made between Chiron and Roche before the conclusion of this Agreement with respect to the subject matter hereof.  None of the terms of this Agreement shall be amended or modified except in writing signed by the parties hereto.

13.          This Agreement shall be construed under and governed by the substantive laws of the State of New York, without giving effect to its rules pertaining to conflicts of law. Chiron and Roche consent to the jurisdiction and venue of the United States District Court for the Northern District of California for purposes of enforcing this Agreement and waive any and all defenses based on personal jurisdiction and venue.

14.          This Agreement shall be deemed and considered to have been drafted by all parties hereto and shall not be construed against any party as the draftsperson hereof.

Settlement Agreement 101000.doc--10/9/00-8:30P

15.       A waiver by any party of any term or condition of this Agreement in any one instance shall not be deemed or construed to be a waiver of such term or condition for any other instance in the future (whether similar or dissimilar) or of any subsequent breach hereof.  All rights, remedies, undertakings, obligations and agreements contained in this Agreement shall be cumulative and none of them shall be a limitation of any other remedy, right, undertaking, obligation or agreement of any of the parties.

16.       This Agreement may be executed in counterparts, and each fully executed counterpart shall be deemed an original of this Agreement.

Settlement Agreement 101000.doc--10/9/00-8:30P

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed as of the date first written above by its duly authorized officer or agent.

CHIRON CORPORATION

By:_____

HOFFMANN-LA ROCHE LTD.

By:_____

HOFFMANN-LA ROCHE INC.

By:_____

ROCHE MOLECULAR SYSTEMS, INC.

By:_____

ROCHE DIAGNOSTIC SYSTEMS, INC.

By:_____

ROCHE HOLDING, LTD.

By:_____

On behalf of itself and as an agent of all other Roche Affiliates for purposes of this Settlement Agreement

Settlement Agreement 101000--10/9/00-8:30P

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed as of the date first written above by its duly authorized officer or agent.

CHIRON CORPORATION

By: _____

F. HOFFMANN-LA ROCHE LTD.

By: _____

HOFFMANN-LA ROCHE INC.

By: _____

ROCHE MOLECULAR SYSTEMS, INC.

By: _____

ROCHE DIAGNOSTIC SYSTEMS, INC.

By: _____

ROCHE HOLDING, LTD.

By: _____
On behalf of itself and as an agent of all other Roche Affiliates for purposes of this Settlement Agreement

30178360.doc--10/9/00-8:30P

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed as of the date first written above by its duly authorized officer or agent.

CHIRON CORPORATION

By:_____

F. HOFFMANN-LA ROCHE LTD.


By:_____

HOFFMANN-LA ROCHE INC.


By:_____

ROCHE MOLECULAR SYSTEMS, INC.


By:_____

ROCHE DIAGNOSTIC SYSTEMS, INC.


By:_____

ROCHE HOLDING, LTD.


By:_____
On behalf of itself and as an agent of all other Roche Affiliates for purposes of this Settlement Agreement


30178360.doc--10/9/00-8:30P

# Exhibit B

# ARBITRATION

## RE: U.S. Patent No. 6,531,276

| | |
|---|---|
| CHIRON CORPORATION,<br><br>        Claimant,<br><br>v.<br><br>ROCHE MOLECULAR SYSTEMS, INC.,<br><br>        Respondent. | **STIPULATED ARBITRATION AWARD** |

This arbitration concerns Patent No. 6,531,276 issued on March 11, 2003 to Chiron Corporation ("Chiron"). Roche Molecular Systems, Inc. ("Roche"), a licensee under the patent had refused to pay royalties under the license. Roche had contested infringement, validity and the applicable royalty rate.

Pursuant to the Settlement Agreement, dated October 10, 2000, an arbitration hearing was conducted in New York City from June 21 to June 29, 2004. After post-hearing briefing, closing arguments were heard on August 13, 2004. Subsequent to the hearing, the parties agreed on a stipulated award, attached hereto as Exhibit A. In keeping with the parties' stipulation, the Arbitrator hereby

339329.01

issues the following AWARD:

1)   As used in this Award the terms set forth below are defined as follows:

   a)   "Agreements" means the HIV Probe License Agreement by and between the parties effective as of October 10, 2000 and the Blood Screening HIV Probe License Agreement by and . between the parties effective as of January 1, 2001;

   b)   "Blood Screening" means the commercial use of products that detect nucleic acid sequence(s) for: (a) the screening of blood, plasma or blood components intended for transfusion or for use in blood products (e.g., without limitation, immunoglobulins); or (b) confirmatory or supplemental testing of the same samples otherwise screened for purposes described in (a);

   c)   "Directed to HIV" means that the claim or technology in question is directed to methods, compositions, reagents or kits specifically for use in nucleic acid-based diagnostic assays for the detection of HIV nucleic acid sequence(s), or specifically for use in the manufacture of any compositions or reagents for use in, or manufacture of nucleic acid-based diagnostic assays for detection of HIV nucleic acid sequence(s) (excluding, for example, polymerase chain reaction claims and technology and other methods for detection of nucleic acid sequence(s) generally which involve nucleic acid amplification). The terminology "specifically for use" as used in this definition, is intended to exclude inventions suitable for use with viruses or analytes other than HIV (including by way of example and not by way of limitation, inventions relating to polymerase chain reaction, or assay formats, improved expression systems, detectable labels, instrumentation, packaging and the like), which shall not be considered "specifically for use" in HIV detection as contemplated by this definition and shall therefore not be considered as "Directed to HIV" hereunder;

   d)   "HIV" means any viral isolate of the human immunodeficiency virus classified as HIV by the International Committee on the Taxonomy of Viruses (or any body that replaces such

339320.01

Committee) or any subtype of such isolate and further includes any isolate that is at least forty percent (40%) homologous to any such isolate and of the same genomic type and substantially the same genomic organization, any isolate that has a genome that either hybridizes to or is substantially identical to any such isolate or its compliment, and any defective or modified form of any of the above isolates;

e) "Patent" means U.S. Patent No. 6,531,276 B1;

f) "Roche Products" means all assays sold by Roche Molecular Systems, Inc. for the detection, quantitation, genotyping or other analyses of nucleic acid sequences Directed to HIV for use in in vitro diagnostics and/or Blood Screening; including without limitation the following products of Roche Molecular Systems, Inc.; Amplicor HIV-I test, v.1.0; Amplicor Monitor test, v. 1.0; Amplicor HIV-I Monitor test, v. 1.5; COBAS Amplicor HIV-I Monitor test, v. 1.5; Ampliscreen HIV-1 test, v. 1.5; and COBAS Ampliscreen HIV-1 test, v. 1.5; and all versions and successors and substitutes therefor;

2)   The patent is valid and enforceable;

3)   The making, use, offer for sale, sale, or importation into the United States of any Roche Product would, in the absence of the licenses granted in the Agreements, as applicable, constitute infringement of one or more claims of the Patent;

4)   The license fees and royalty payments set forth in the Agreements are due to Chiron for sales of the Roche Products in the United States;

5)   Roche Molecular Systems, Inc., on behalf of itself and its affiliates, releases any claims it asserted in the Arbitration (or arising out of the same facts and circumstances as the claims it asserted in the Arbitration) that are contrary to the foregoing Sections 2, 3, and 4;

6)   Roche Molecular Systems, Inc., shall hereafter promptly exercise commercially reasonable efforts to support any steps Chiron may undertake to have this stipulated arbitration AWARD promptly confirmed by a court of competent jurisdiction selected by Chiron; and

7) The parties shall each bear their respective costs and expenses incurred during the arbitration, including attorneys' fees.

Dated: _Sept 23_, 2004

By: _Charles B. Renfrew_

Charles B. Renfrew
Arbitrator

339329.01

1

2 **BEFORE THE HONORABLE**
**CHARLES B. RENFREW, ARBITRATOR**

3

4 IN THE MATTER OF THE ARBITRATION

5 BETWEEN

6 CHIRON CORPORATION,                    | **STIPULATED ARBITRATION**
                                              **AWARD**
7                          Claimant

8 AND

9 ROCHE MOLECULAR SYSTEMS, INC.,

10                          Respondent

11

12 ## Stipulation

13

14 Chiron Corporation and Roche Molecular Systems, Inc., on behalf of themselves and
their affiliates, hereby irrevocably stipulate as follows:

15 1.     "Agreements" means the HIV Probe License Agreement by and between the
parties effective as of October 10, 2000 and the Blood Screening HIV Probe License

16 Agreement by and between the parties effective as of January 1, 2001;

17 2.     "Blood Screening" means the commercial use of products that detect nucleic acid
sequence(s) for: (a) the screening of blood, plasma or blood components intended for

18 transfusion or for use in blood products (e.g., without limitation, immunoglobulins); or
(b) confirmatory or supplemental testing of the same samples otherwise screened for

19 purposes described in (a);

20 3.     "Directed to HIV" means that the claim or technology in question is directed to
methods, compositions, reagents or kits specifically for use in nucleic acid-based

21 diagnostic assays for the detection of HIV nucleic acid sequence(s), or specifically for
use in the manufacture of any compositions or reagents for use in, or manufacture of

22 nucleic acid-based diagnostic assays for detection of HIV nucleic acid sequence(s)
(excluding, for example, polymerase chain reaction claims and technology and other

23 methods for detection of nucleic acid sequence(s) generally which involve nucleic acid
amplification).  The terminology "specifically for use" as used in this definition, is

24 intended to exclude inventions suitable for use with viruses or analytes other than HIV
(including by way of example and not by way of limitation, inventions relating to

25 polymerase chain reaction, or assay formats, improved expression systems, detectable
labels, instrumentation, packaging and the like), which shall not be considered

26 "specifically for use" in HIV detection as contemplated by this definition and shall
therefore not be considered as "Directed to HIV" hereunder;

27 4.     "HIV" means any viral isolate of the human immunodeficiency virus classified as
HIV by the International Committee on the Taxonomy of Viruses (or any body that

28 replaces such Committee) or any subtype of such isolate and further includes any isolate
that is at least forty percent (40%) homologous to any such isolate and of the same

rf-1766082

1  genomic type and substantially the same genomic organization, any isolate that has a genome that either hybridizes to or is substantially identical to any such isolate or its

2  compliment, and any defective or modified form of any of the above isolates;

3  5.   "Patent" means U.S. Patent No. 6,531,276 B1;

4  6.   "Roche Products" means all assays sold by Roche Molecular Systems, Inc. for the detection, quantitation, genotyping or other analyses of nucleic acid sequences Directed to HIV for use in in vitro diagnostics and/or Blood Screening, including without

5  limitation the following products of Roche Molecular Systems, Inc.: Amplicor HIV-1 test, v. 1.0; Amplicor HIV-1 Monitor test, v. 1.0; Amplicor HIV-1 Monitor test, v. 1.5;

6  COBAS Amplicor HIV-1 Monitor test, v. 1.5; Ampliscreen HIV-1 test, v. 1.5; and COBAS Ampliscreen HIV-1 test, v. 1.5; and all versions and successors and substitutes

7  therefor;

8  7.   The Patent is valid and enforceable;

9  8.   The making, use, offer for sale, sale, or importation into the United States of any Roche Product would, in the absence of the licenses granted in the Agreements, as applicable, constitute infringement of one or more claims of the Patent;

10  9.   The license fees and royalty payments set forth in the Agreements are due to

11  Chiron for sales of the Roche Products in the United States;

12  10.   Roche Molecular Systems, Inc., on behalf of itself and its affiliates, releases any claims it asserted in the Arbitration (or arising out of the same facts and circumstances as the claims it asserted in the Arbitration) that are contrary to the foregoing Sections 7,

13  8, and 9; and

14  11.   The parties hereby request that the Arbitrator enter an award in the above-captioned Arbitration consistent with the forgoing stipulation.  Roche Molecular

15  Systems, Inc. shall thereafter promptly exercise commercially reasonable efforts to support any steps Chiron may undertake to have such stipulated arbitration award

16  promptly confirmed by a court of competent jurisdiction selected by Chiron.

17  Date: September 16, 2004      Agreed: _Charles B. Cohler_

18

19  Stephen S. Rabinowitz
   FRIED, FRANK, HARRIS, SHRIVER &
   JACOBSON LLP

20

21  Charles B. Cohler
   PAUL, HASTINGS, JANOFSKY & WALKER LLP

22  Attorneys for Roche Molecular Systems, Inc.

23  Date: September 13, 2004      Agreed: _Rachel Krevans_

24  Rachel Krevans
   Mathew I. Kreeger

25  Wesley E. Overson
   Lawrence B. Berroya

26  Peter P. Meringolo
   MORRISON & FOERSTER LLP

27

28  Attorneys for Chiron Corporation

-2-

1

## CERTIFICATE OF SERVICE

2       I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address
is 425 Market Street, San Francisco, California  94105-2482.  I am not a party to the within cause,
3   and I am over the age of eighteen years.

4       I further declare that on November 3, 2004, I served a copy of:

5           **JOINT PETITION TO CONFIRM ARBITRATION AWARD
            AND FOR ENTRY OF JUDGMENT**
6
            **[PROPOSED] ORDER GRANTING JOINT PETITION TO
7           CONFIRM ARBITRATION AWARD AND FOR ENTRY OF
            JUDGMENT**
8

9   ☒       **BY OVERNIGHT DELIVERY [Fed. Rule Civ. Proc. rule 5(b)]** by placing a true
            copy thereof enclosed in a sealed envelope with delivery fees provided for,
10          addressed as follows, for collection by UPS, at 425 Market Street, San Francisco,
            California  94105-2482 in accordance with Morrison & Foerster LLP's ordinary
11          business practices.

12          I am readily familiar with Morrison & Foerster LLP's practice for collection and
13          processing of correspondence for overnight delivery and know that in the ordinary
            course of Morrison & Foerster LLP's business practice the document(s) described
14          above will be deposited in a box or other facility regularly maintained by UPS or
            delivered to an authorized courier or driver authorized by UPS to receive documents
15          on the same date that it (they) is are placed at Morrison & Foerster LLP for collection.

16  ☒       **BY PERSONAL SERVICE [Fed. Rule Civ. Proc. rule  5(b)]** by placing a true
17          copy thereof enclosed in a sealed envelope addressed as follows for collection and
            delivery at the mailroom of Morrison & Foerster LLP, causing personal delivery of
18          the document(s) listed above to the person(s) at the address(es) set forth below.

19          I am readily familiar with Morrison & Foerster LLP's practice for the collection and
20          processing of documents for hand delivery and know that in the ordinary course of
            Morrison & Foerster LLP's business practice the document(s) described above will be
21          taken from Morrison & Foerster LLP's mailroom and hand delivered to the
            document's addressee (or left with an employee or person in charge of the
22          addressee's office) on the same date that it is placed at Morrison & Foerster LLP's
            mailroom.
23
    By personal service
24
            Charles B. Cohler, Esq.
25          Paul, Hastings, Janofsky & Walker LLP
            55 Second Street, 24th floor
26          San Francisco, CA  94105-3441

27

28

1   By overnight service

2         Stephen S. Rabinowitz, Esq.
          Fried, Frank, Harris, Shriver & Jacobson, LLP
3         One New York Plaza
          New York, NY  10004-8000
4
          I declare under penalty of perjury that the foregoing is true and correct.
5
          Executed at San Francisco, California, this 3 day of November 2004.
6

7

8

9         Maureen E. Lechwar
10              (typed)                                        (signature)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28